UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL ALAN DAVIS,<br><br>             Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | Case No.: 1:14-cv-930 AWI- BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Saul Davis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards, and recommends that the Court affirm the Commissioner's denial of benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

**FACTS AND PRIOR PROCEEDINGS**

On January 18, 2011, Plaintiff filed his current application for DIB alleging disability beginning February 10, 2009. AR 13, 49.[2] Plaintiff's application was denied initially and on reconsideration. AR 50. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Raymond L. Souza held a hearing on July 24, 2012, and issued an order denying benefits on August 30, 2012. AR 13-24. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on July 24, 2012, in Stockton, California. AR 13. Plaintiff appeared and testified. AR 31. He was represented by attorney Romina Otoya. AR 30. Impartial Vocational Expert ("VE") Stephen Schmidt also testified. AR 30.

Plaintiff was born on October 13, 1959, and was fifty-two years old at the time of the hearing. AR 34. He has a high-school education and last worked as a field service technician in 2009. AR 35. Plaintiff is married and lives with his wife in Patterson, California. AR 34. Plaintiff testified that in 2009 he suffered a cracked sternum from an on-the-job high-speed motor vehicle accident. AR 35-36. He takes pain medication to alleviate his symptoms but stated that surgery was not advised. AR 36, 39, 41-42. Plaintiff drives on occasion, but due to problems with anxiety he tries not to. Plaintiff testified that he is unable to do any heavy lifting, can sit for one hour, stand and walk 30 minutes. AR 38, 43. He naps throughout the day, watches television, takes care of his personal needs and does the shopping with his wife. AR 38-40. He testified he was always in pain and his depression leaves him curled up on the floor, crying twice a month. AR 41-42. Plaintiff has no energy and sleeps frequently to avoid what he described as "pain gnawing on you 24/7." AR 42.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Stephen Schmidt. AR 44. The VE testified that Plaintiff has past relevant work as office machine servicer. AR 45. The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

work history. AR 46. This individual can lift 20 pounds occasionally and lift 10 pounds frequently. He can sit, stand or walk for six hours out of an eight hour day. AR 46. Additionally, this individual can occasionally bilaterally reach. AR 46. The individual however is limited to work involving simple, routine, and repetitive tasks. AR 46. The VE testified that a person with such limitations could perform jobs in the national economy including cleaner, cashier, and office helper. AR 46.

In a final hypothetical question, the ALJ asked the VE to consider the same individual except that this person is required to have a 10-minute break every 30 minutes in addition to regularly scheduled breaks. AR 46. The VE indicated that such an individual would be unable to perform any work as it exists in the national economy. AR 46-47. The VE also testified that if the Plaintiff was found sedentary and the GRIDS[3] were applied, the GRIDS would dictate a finding of disabled based on Plaintiff's age. AR 47.

**Medical Record**

The entire medical record was reviewed by the Court. AR 185-652. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-30. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since February 10, 2009. AR 15. Further, the ALJ identified history of sternum fracture, obesity, and depression as severe impairments. AR 15. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 15.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work, able to lift 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours in an eight-hour day, and sit two hours per day with normal breaks. He should not climb ladders, ropes or scaffolds; could occasionally reach in all directions including overhead; must avoid concentrated excessive vibration, unprotected

---

[3] The GRIDS refers to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

3

heights and the use of hazardous machinery. He could perform simple, routine, repetitive tasks, described in the Dictionary of Occupational Titles ("DOT") as Specific Vocational Preparedness ("SVP") 1 or 2, with no strict production quotas per shift. AR 17. Plaintiff could not perform his past relevant work as a service technician but based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 23. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 23.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his motion for summary judgment, Plaintiff contends that the ALJ (1) erred in weighing the medical evidence and (2) improperly assessed his credibility.

## DISCUSSION[4]

### 1. The ALJ Properly Discounted Plaintiff's Treating Physicians

Plaintiff first challenges the ALJ's disability finding for failing to provide sufficient reasons for rejecting the opinion of his treating physicians, Michael Nichols, M.D. and Aruna Rao, M.D. (Doc. 16 at 12-18). Plaintiff specifically alleges that the reasons provided by the ALJ are neither specific or legitimate.

#### A. Dr. Nichols

Plaintiff sought treatment with family practitioner Dr. Nichols after his motor vehicle accident beginning on February 12, 2009. AR 205, 213-225. Plaintiff complained that he was unable to take a deep breath without pain and experienced some low back pain. AR 205. On February 19, 2009, Dr. Nichols noted mild tenderness in Plaintiff's lower left lumbar region. AR 206. A spine x-ray was negative but the sternum x-ray showed a "minimally depressed" fracture and a fragment of displaced bone. AR 189-191, 201-202. Plaintiff was provided pain medication and referred to physical therapy. AR 206. On March 3, 2009, Plaintiff reported improvement with his chest pain, less back pain; he did not attend physical therapy, and wanted to continue with medication. AR 207. He was in no acute distress but reported tenderness in his chest and lower back. AR 207.

In connection with Plaintiff's workers' compensation claim, Dr. Nichols opined Plaintiff was unable to lift, carry, bend, and stoop, but estimated Plaintiff would be back to work by April 13, 2009 AR 305. In June 2009, Dr. Nichols noted Plaintiff reported feeling a little better, was in no acute

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

distress, and wanted his medications refilled. AR 209, 243. In August 2009, Dr. Nichols noted Plaintiff reported he was still having pain and "waiting on healing." He claimed he could not lift and driving on the freeway was difficult (due to anxiety). AR 210. Plaintiff was in no acute distress with mild-mid-sternal tenderness noted. AR 210. In October and December, Dr. Nichols noted Plaintiff reported pain after performing minimal tasks and standing, and was only driving short distances. AR 211. He was in no acute distress and reported his pain was managed with his medications. AR 211-212. From February 2009 through March 2010, Dr. Nichols continued to extend Plaintiff's off-work periods. AR 290, 291, 298, 319, 323, 327, 330-332, 334, 335. Dr. Nichols also wrote a note asking that Plaintiff be permanently removed from jury duty because he was unable to sit or stand for long periods of time. AR 333, 336.

> The ALJ summarized Dr. Nichols' opinion as follows:
>
> Michael Nicols [sic], M.D., the claimant's treating physician, submitted multiple temporary work relases. In March 2010, Dr. Nicols opined the claimant was 'unable to sit or stand for long periods of time due to his pain from this injury.' The undersigned gives little weight to Dr. Nicols' opinions because they are overly restrictive given the claimant's positive response to analgesic medication and physical examinations showing normal gait, full motor strength, and full flexion and abduction of the claimant's shoulders bilaterally without pain.
>
> AR 20.

**B. Dr. Rao**

In May 2011, Dr. Aruna Rao began treating Plaintiff. Plaintiff exhibited tenderness in his chest wall but had no trouble breathing. AR 413. Dr. Rao opined Plaintiff should avoid jerky movements, lift no more than 25 pounds, and could tolerate sedentary work up to 4 hours per day. AR 414. In June and July 2011, Plaintiff had a flare-up of sternum pain, and reported a constant dull achiness, rating the pain as 2 to 3 on a scale of 10. AR 407-410. Dr. Rao noted spasms in the thoracic spine and tenderness in the sternum region. AR 407. Plaintiff reported that his current medications were helpful and requested a refill. AR 407-408, 409-410.

In August 2011, Dr. Rao noted Plaintiff reported constant dull achiness with intermittent shooting pains with certain movements. He had muscle spasms in his thoracic spine muscles and some tenderness in the sternum region. He was oriented and pleasant. AR 535. Also in August 2011, Dr.

Rao reported Plaintiff could return to modified work that included no jerky movements, no bending, no lifting over 25 pounds, and sedentary work of up to 4 hours. AR 509, 513, 516, 518 522, 527, 530, 532-533, 535.

In September 2011, Plaintiff reported increased pain between 3 and 4 on a scale of 10, and found himself crying frequently due to increased anxiety, depression and a lack of energy. AR 532. Upon examination, his physical and mental state were unchanged. AR 532-533. Later that month, Plaintiff continued to report pain in the 3-4 range and wanted a refill of his medications. AR 529.

Plaintiff saw Dr. Rao again in November 2011 and reported chest pain 3/10 severity, but reduced depression. He noticed upon bending and lifting a popping sound in his chest with increased pain. Plaintiff reported that his medications were helpful and he requested a refill. AR 526. Plaintiff was alert and oriented with some tenderness noted in the anterior chest wall region. AR 526.

In December 2011, Dr. Rao reported Plaintiff as having intermittent pain, and Plaintiff reported being more irritable, having difficulty sleeping, with decreased concentration and anxiety while driving. AR 523. Plaintiff was alert and oriented with some tenderness noted in the anterior chest wall region. AR 523-524.

In January 2012, Plaintiff reported difficulty sleeping, being afraid to drive and getting only temporary pain relief, but indicating his medications were otherwise helpful. AR 520. His physical and mental examinations remained unchanged with no anxiety noted. AR 520. In February 2012, Plaintiff reported constant dull pain worse upon bending, lifting and with jerky movements, but that his medications were significantly helpful in relieving his pain. AR 517. Dr. Rao reported that an Agreed Medical Expert for Plaintiff's workers compensation claim recommended part-time work with no heavy lifting. AR 517. Plaintiff's physical and mental examinations remained unchanged with no anxiety. AR 517. In March and April 2012, Dr. Rao continued to note Plaintiff was capable of performing skilled work, on a part-time basis, with no heavy lifting. AR 507, 511. Plaintiff's physical examination remained unchanged. AR 507, 511. In June, Plaintiff complained of continued chest pain, with shooting or stabbing pains on sudden movements like bending or coughing. His physical examination was normal but he still had some anxiety, and reported taking anxiety medication when he travels. AR 514.

The ALJ considered Dr. Rao's opinions as follows:

> Aruna Rao, M.D., the claimant's treating physician, submitted several treatment notes containing various residential functional capacity assessments. From May 2011 until September 2011, Dr. Rao opined the claimant was limited to sedentary work starting at four hours per day; could not bend; could not lift more than 20-25 pounds; was precluded from repetitive activity; and had to avoid sudden jerky movements. From December 2011 until January 2012, Dr. Rao modified her opinion and opined the claimant was limited to sedentary work starting at four hours; and could lift no more than 25 pounds. Finally, beginning in February 2012, Dr. Rao opined the claimant "should be allowed to work at part time in his highly skilled profession," but is precluded from heavy lifting. The undersigned gives little weight to Dr. Rao's opinion regarding the claimant's inability to bend because it is inconsistent with the claimant's own statements that bending did not increase his symptoms. The undersigned gives some weight to Dr. Rao's opinions regarding the claimant's ability to lift up to 25 pounds because it was consistent with the claimant's positive response to medication in conjunction with image studies showing persistent non-union of the claimant's sternum fracture. The undersigned gives little weight to Dr. Rao's opinion regarding the claimant's need to avoid repetitive and jerky movements because it was inconsistent with specialists' [Dr. Calhoun] treatment notes showing the claimant's sternum was stable and he was "free and safe to do any activity that he wants within the constraints of pain." Finally, the undersigned gives little weight to Dr. Rao's opinion regarding the claimant's restriction to part-time work and inability to stand and walk for at least six hours in an eight-hour workday because it was inconsistent with the claimant's normal gait, positive response to pain medication and generally conservative treatment.

AR 20.

### C. Agency Physician

State reviewing physician, Dr. Keith reviewed Plaintiff's medical records and completed a case analysis. The ALJ summarized the reviewing physician's findings as follows.

> At the request of this agency, Sharon Keith, M.D. reviewed the claimant's medical record and submitted a Physical Residual Functional Capacity Assessment Form dated May 2011. Dr. Keith diagnosed the claimant with obesity and history of sternal fracture. Dr. Keith opined that claimant was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight-hour work day, and sit six hours in an eight-hour workday. The undersigned gives significant weight to Dr. Keith's opinion because it was consistent with treatment notes showing a stable sternum and an ability to perform work activities without cause harm to the sternum. Moreover, her opinion was consistent with treatment notes documenting a normal gait, generally conservative treatment and a positive response to analgesic medication.

AR 21.

### D. Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to

the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

///

///

### E.  The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues the ALJ did not attach appropriate weight to the opinion of his treating physicians considering he treated with his physicians frequently since his car accident. (Doc. 16 at 16). The Court disagrees. The ALJ considered the opinion of the treating physicians Drs. Nichols and Rao, and the opinion of a State agency reviewing physician, Dr. Keith and reasonably gave some weight to the treating physicians but the greatest weight to the opinions of Dr. Keith, who relied on Plaintiff's treatment notes and overall conservative findings. Dr. Keith's opinion is consistent with the medical record, which showed conservative treatment with mild objective findings.

At the outset, although Plaintiff argues that his treating physicians opinions are entitled to more weight because Drs. Nichols and Rao treated Plaintiff for over two years in connection with his workers' compensation claim; the length of the treatment relationship is one of many factors an ALJ may consider when weighing a treating medical source opinion. While a treating medical source will generally receive greater weight because he or she is in the best position to obtain a longitudinal perspective of the claimant's impairments, *see* 20 C.F.R. § 404.1527(c)(2)(i), an ALJ may nevertheless discount such an opinion if it lacks sufficient support and is inconsistent with objective clinical evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3),(4) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record). Indeed, the Ninth Circuit has held that an ALJ need not accept a treating medical source opinion if it is "conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ provided specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician in favor of Plaintiff's reviewing physician. First, the ALJ rejected treating physician, Dr. Nichols' periodic off work forms that extended Plaintiff's disability from February 23, 2009 to March 2010. AR 20, 290, 291, 298, 319, 323, 327, 330-332, 334-335. The ALJ noted that Dr. Nichols reported Plaintiff was unable to sit or stand for long periods of time due to pain. AR 20, 336. This statement, however, comes from requests by Dr. Nichols, made on Plaintiff's behalf, that he

be permanently excused from jury duty. AR 333, 336. The ALJ found this limitation overly restrictive, given Plaintiff's positive response to medication, and physical examinations showing a normal gait, full motor strength and shoulder movements bilaterally without pain. AR 20.

Next, while Dr. Nichols physical examinations generally reference Plaintiff's sternum fracture, Dr. Nichols treatment notes reveal no functional limitations. AR 19-21, 185-186, 192-193, 205, 206, 207, 209-212, 231, 237, 243, 339, 361-362, 407-410, 423-424, 514, 520, 529, 616, 641-642. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ observed that treating source treatment notes provide no basis for the functional restrictions opined); *see also Batson v. Comm'r of the SSA*, 359 F.3d at 1196- 1197 (9th Cir. 2004) ("The ALJ discounted [the treating physician's] view because it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the plaintiff's] medical condition, … ."). Despite Dr. Nichols' mild findings, Dr. Nichols continued to extend Plaintiff's work releases. AR 336. However, Dr. Nichols observed only mild tenderness at the injury site, and provided conservative treatment. AR 17, 18, 20, 205-228, 247-336. Further, Dr. Nichols findings were at odds with Plaintiff's reported pain levels at a 2-3 severity level, and his repeated requests for refills of his pain medications, claiming they were helpful in controlling his pain. AR 19-21, 185, 207, 209, 211-212, 243, 361, 402, 407-410, 514, 517, 520, 526, 529,616.

Further, the ALJ discounted Dr. Nichols opinion because it was inconsistent with the objective medical records. AR 20. The ALJ noted that while Dr. Nichols approved Plaintiff's continued absence from work, treatment records showed the claimant had a "normal gait, full motor strength, and full flexion and abduction of the claimant's shoulder bilaterally without pain." AR 20. X-Rays from visits with Dr. Nichols further showed that "five views of the lumbar spine show no obvious fractures or dislocations. The oblique views show no subluxations or neural foraminal narrowing [and] grossly unremarkable spine." AR 189. Additionally, x-rays showed a "minimally depressed sternal fracture." AR 190. The State agency physician, however, reviewed these x-rays and other objective clinical evidence and found that Plaintiff was capable of performing light work. Because those findings were consistent with the foregoing evidence, they constituted substantial evidence supporting the ALJ's

11

decision. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings). Thus, it was reasonable for the ALJ to favor the opinions of the State agency doctor over Dr. Nichols treating opinion. AR 20. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("where the opinion of Plaintiff's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict"). For these reasons, the ALJ was entitled to discount Dr. Nichols' opinion.

Plaintiff also argues the ALJ failed to properly reject the opinion of Dr. Rao—another treating physician—that Plaintiff could only work part-time, with no bending, no repetitive activities, and was limited to sedentary work, but could lift 20-25 pounds. AR 20, 407-410, 414, 523-525, 529-530, 532-533, 534-535. The ALJ noted that Dr. Rao began treating Plaintiff in May 2011, after Plaintiff's date last insured. AR 20. While Dr. Rao reported bending and jerky movements aggravated Plaintiff's pain, the ALJ rejected such limitations because Plaintiff did not include either of these actions as a trigger for pain when he spoke with the examining physician in November 2011. AR 20, 639- 640. Moreover, the ALJ noted that Plaintiff's need to avoid repetitive jerky movements conflicted with Dr. Calhoun's August 2009 note that Plaintiff's sternum was stable, Plaintiff was free to perform any activities he might like within his pain constraints, and "there is no concern from [Plaintiff] harming himself from labor." AR 19, 231, 233.

In addition, the ALJ did not, as Plaintiff asserts, fail to assign Dr. Rao's opinion supporting weight. Instead, the ALJ gave some credit to Dr. Rao's lifting limitation because it was consistent with the record evidence regarding Plaintiff's response to treatment, imaging studies, and Dr. Keith's opinion. AR 20, 230-245, 338-376, 393-400, 407-415. The ALJ further found no basis in the record or in Dr. Rao's treatment notes to restrict Plaintiff to part-time work, or place limits on his ability to sit, stand or walk. AR 20, 186-187, 380-386, 338-376, 407-415, 514-535, 635-652. The ALJ rejected Dr. Rao's opinion where it was unsupported by the mild objective findings demonstrating that Plaintiff

had a "normal gait, positive response to pain medication, and generally conservative treatment." AR 20. Thus, the ALJ provided specific and legitimate reasons for rejecting Dr. Rao's limitations. *See, e.g., Valentine v.Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion).

Finally, Plaintiff challenges the ALJ's reliance on the objective medical findings because according to Plaintiff, Dr. Rao's opinion is based on Plaintiff's sternum pain, muscle spasms, chronic pain and anxiety. However, this argument centers on Plaintiff's subjective symptoms which the ALJ found lacked credibility. An "ALJ may reject a treating physician's opinion that is based to a large extent on a claimant's own accounts of symptoms and limitations may be disregarded where those subjective complaints have been properly discounted by the ALJ. *See Tonapetyan,* 242 F.3d at 1149 ("ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (same). Plaintiff further fails to show his subjective pain assessment has an impact on his ability to sit, stand or walk six hours in an eight hour day. The only diagnostic study of Plaintiff's spine was negative. AR 189. Recognizing this lack of evidence, the ALJ noted Plaintiff had no problems walking, did not use an assistive device, and no limitations were reported due to back problems in any of the treatment notes or examination notes. AR 19-21.

In sum, the ALJ gave specific and legitimate reasons for rejecting plaintiff's treating physician evidence. AR 20. The ALJ properly resolved the conflict between the opinions of Dr. Nichols and Rao and the reviewing physician and he concluded Plaintiff could perform light work with certain limitations, which is consistent with the objective evidence. *See Andrews v. Shalala*, 53 F.3d at 1039 (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources). Accordingly, the ALJ's finding in this regard is free of legal error and is supported by substantial evidence.[5]

---

[5] The Court concludes that the ALJ properly determined Plaintiff's RFC based on the medical evidence and therefore the ALJ's hypothetical questions to the VE based on Plaintiff's RFC were also not error. (Doc. 16 at 23).

### 2. The ALJ Properly Discounted Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in rejecting his excessive pain symptoms. (Doc. 16 at 21). The Court disagrees.

#### A. Legal Standard

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

#### B. The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

The ALJ rejected Plaintiff's physical impairment testimony for several clear and convincing reasons. First, the ALJ found that the objective medical evidence does not support the alleged severity of Plaintiff's symptoms. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged pain symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). As noted above, Plaintiff complained that based on his debilitating chest pain he is unable to stand and walk for more than thirty minutes at a time. However, the ALJ noted that Plaintiff was repeatedly observed to have a normal gait, and did not require an ambulatory device. AR 19, 380-381, 641-642. The ALJ also observed that Plaintiff exhibited little difficulty sitting throughout the hearing and showed no signs of

overt pain. AR 20. It was proper for the ALJ to consider Plaintiff's medical signs in assessing his credibility. *See* 20 C.F.R. §§ 404.1529 (c)(1) & 2 and 416.929(c)(1) & (2) (2013) (requiring consideration of medical history, medical signs and laboratory findings, and objective medical evidence in evaluating the extent and impact of alleged pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (upholding credibility assessment where results of medical tests of functioning did not support subjective allegation); *Batson v. Comm'r of the Social Security Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir. 1986) (discussing language of Act requiring consideration of medical evidence in assessing subjective complaints).

Second, the ALJ found that Plaintiff's activities of daily living were consistent with light work. AR 19. The ALJ may properly discount Plaintiff's credibility based on daily activities. *Orn v. Astrue*, 495 F.3d at 638. Plaintiff's daily activities included taking care of his personal needs, and shopping with his wife. AR 36, 40. He could cook simple meals, was able to take public transportation, run errands and go to appointments. AR 481. Plaintiff also testified that he drives on occasion but since his accident, driving makes him anxious and aggravates his PTSD. AR 36, 680. The ALJ also noted Plaintiff went on vacation in May 2012. AR 19, 598-600. While it is true that limited daily activities are not always consistent with the ability to perform work at a full-time job, *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. Ariz. 2014), the ALJ here was referencing Plaintiff's participation in activities that undermine his contention that he is unable to sit or stand for longer than thirty-minutes. This is an appropriate finding. Based on this significant evidence in the record, the ALJ could properly discredit Plaintiff's testimony because his level of activity is inconsistent with the degree of impairment that he alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

Third, the ALJ noted that Plaintiff's excessive pain testimony was undermined by repeated evidence that Plaintiff's "pain symptoms were well controlled with medication." AR 19. Plaintiff reported on numerous occasions his pain medications were helpful. AR 185, 207, 209, 211-212, 243, 361, 402, 407-410, 514, 517, 520, 526, 529, 616. The record contains evidence that Plaintiff sought

additional pain medication when his pain was between 2-3 on a 10 severity scale. AR 337, 407. Indeed, at the hearing, the ALJ asked Plaintiff: "as far as your chest pain on average on a scale of 1-10, 1 being like you were in high, 10 being pain so excruciating you have to go to the hospital in an ambulance, 9 being that you have to go to the emergency room and someone has to drive you there, 8 being that you can drive yourself there. Where would you say your pain is? AR 37. Plaintiff answered: "it typically runs between 2-3 with the medication I take. I take pretty strong Vicodin four times a day. That tamps it down as long as I don't do [sic] something to aggravate it." AR 37. The ALJ's observation of Plaintiff's improvement with medication is a clear and convincing reason for rejecting Plaintiff's excessive pain testimony. An impairment that is amenable to control cannot be a basis for disability. *Warre v. Commissioner of Social Security*, 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, the ALJ properly considered the fact that Plaintiff's medication helped his condition when evaluating Plaintiff's credibility. *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998).

Lastly, the ALJ cited Plaintiff's conservative treatment history to support his adverse credibility finding. Plaintiff argues the ALJ's finding in this respect is incorrect because no other treatment was advised. However, Plaintiff misstates the medical evidence. Dr. Calhoun stated he was not certain that surgery would result in an overall benefit to Plaintiff, but indicated that surgery is an option if Plaintiff's pain "were that debilitating for him." AR 231, 233. Dr. Wong, who saw Plaintiff only a few weeks after the accident, also did not feel surgery was necessary. AR 185-187. As the ALJ noted, shortly after the accident, Plaintiff did not claim his pain was debilitating. AR 233, 639-640. It was rational for the ALJ to determine that surgery was not suggested because Plaintiff's symptoms were not severe enough to warrant surgery. The ALJ further noted that Plaintiff received routine treatment medication for his injury and pain medication, and while several physicians did not believe that surgery was likely to help Plaintiff, it was an option should Plaintiff's pain become unbearable. AR 18, 231, 233. Plaintiff was never referred to a pain specialist and Plaintiff did not indicate that he is seeking specialized treatment or other methods to alleviate his pain. Overall, the record lacks evidence that additional surgery or any other aggressive treatment for Plaintiff was recommended. Evidence of conservative treatment may diminish a Plaintiff's credibility and is

sufficient reason to discount a claimant's testimony regarding the severity of impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment was sufficient to discredit testimony).

Finally, Plaintiff also challenges the ALJ's decision to reject the third party evidence from his wife, Debra Davis. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of a lay witness.") In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does not "clearly link his determination to those reasons" and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

The ALJ assessed Mrs. Davis' opinion evidence as follows:

> As for the opinion evidence, Debra Davis, the claimant's wife submitted a Third Party Adult Function Report dated August 2011. Ms. Davis corroborates the claimant's allegations regarding his ability to perform activities of daily living. Although Ms. Davis' statements may be is sincere and well meaning, lay witnesses are not medical or vocational experts capable of determining whether the claimant is disabled. Furthermore, her statements appear to be mere extensions of the claimant's own allegations. Rephrasing or reassertion of the claimant's own allegations, in a different format, is not a basis for finding a disability. For the same reasons the undersigned finds the claimant's allegations of disability were not consistent with the record, so too were the allegations made by Ms. Davis found to be unpersuasive.

AR 20.

Here, Plaintiff's challenge is without merit. The ALJ provided germane reasons to reject Ms. Davis' lay testimony. First, the ALJ properly noted that the ultimate issue of disability is for the Commissioner to make. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[a] disability is an administrative determination of how an impairment, in relation to education, age, technological, economic and social factors, affects ability to engage in gainful activity"). Second, the ALJ found that Mrs. Davis' testimony mirrored that of Plaintiff's. The ALJ discussed Plaintiff's activities of daily living and concluded that those activities of daily living did not support the degree of pain

alleged by Plaintiff or Mrs. Davis. AR at 19- 20. These are germane reasons to reject Mrs. Davis' testimony. *See Bayliss,* 427 F.3d at 1218 ("Inconsistency with medical evidence is one such reason [to reject lay testimony]. The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.")

Overall, the ALJ's credibility findings with respect to Plaintiff's excessive pain testimony were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). By considering Plaintiff's conservative treatment history, symptom improvement, and the objective medical evidence, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Carolyn W. Colvin and against Plaintiff Saul Davis.

These findings and recommendations will be submitted to the district judge pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the

Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 9, 2015**                    /s/ Barbara A. McAuliffe
                                                    UNITED STATES MAGISTRATE JUDGE